**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Jean F.,

Petitioner,

v.

Todd Blanche, *Acting Attorney General*; Markwayne Mullin, *Secretary, U.S. Department of Homeland Security*; David J. Venturella, *Acting Director of Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

File No. 26-CV-4160 (JMB/ECW)

**ORDER**

---

Gabriel Spellburg, Justice North, Duluth, MN, for Petitioner Jean F.

Carl H. Berry, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Jean F.'s[1] Petition for Writ of Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood as Respondents. (*Id.*) For the reasons explained below, the Court grants the Petition.

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

## FINDINGS OF FACT

1. Jean F. is a 31-year-old native and citizen of Haiti. (Doc. No. 8-5 at 1).

2. Jean F. is a father of two children and he is expecting to welcome a third child as well. (Pet. at 7.)

3. On February 10, 2023, Jean F. came to the United States under a humanitarian program that paroled in citizens from Cuba, Haiti, Venezuela, and Nicaragua who faced natural disasters, famine, and political unrest. (*Id.* at 4.)

4. Under this program, Haitians citizens were paroled into the United States after passing security background checks and other measures. (*Id.*) At the point of entry, Jean F. was issued with a Notice to Appear, scheduled for September 3, 2025. (*Id.* at 5.)

5. On August 17, 2023, Jean F. submitted an I-589 Application for Asylum and for Withing of Removal, which currently has a pending status. (Pet. at 5; Doc. No. 8-5 at 3.) On February 9, 2024, Jean F.'s parole expired. (Doc. No. 7 at 2.)

6. On September 6, 2025, Jean F. was issued a second Notice to Appear scheduled for January 22, 2026. (Doc. No. 8-4 at 1–2.)

7. Jean F. has attended all immigration court hearings. (Pet. at 5.)

8. On September 6, 2026, Jean F. was arrested in Long Prairie, Minnesota and charged with violating Minnesota law. (Pet. at 6 (listing charges for violations of Minn. Stat. §§ 609.713.1; 609.2242.1(1)).

9. On September 8, 2026, a Minnesota state judge released Jean F. on bond. Other than these charges, Jean F. has no criminal history. (Pet. at 6; Doc. No. 8-5 at 2.)

10. Immediately upon release from bond, local authorities led Jean F. out an exit

door where awaiting ICE agents apprehended him. (Pet. at 6.) Upon his arrest, ICE agents served him a Form I-200 warrant. (Doc. No. 7 at 2.)

11. The Form I-200 was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [Immigration and Nationality Act (INA)] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 7-2.) Thus, Respondents detained Jean F. pursuant to their authority under 8 U.S.C. § 1226.

12. Respondents have detained Jean F. at the Sherburne County Jails since being taken into custody. (Pet. at 32.)

13. While in custody, Jean F. had a subsequent immigration hearing scheduled for October 7, 2026, that was moved without notice to September 15, 2026. (*Id.* at 7; Doc. No. 8-8.) On September 16, 2026, Jean F.'s counsel discovered that Jean F. had been ordered removed, absent the filing of an appeal. (Pet. at 7.)

14. On September 25, 2026, Jean F. filed this Petition. (*See* Pet.)

15. On September 28, 2026, the Court ordered Respondents, among other things, to respond to the Petition on or before 11:00 a.m. on September 30, 2026. (Doc. No. 4.) Respondents filed a timely response to the Petition. (Doc. No. 7.) However, although the Court ordered Respondent to provide copies of all orders of release and supervision, (Doc. No. 5.), no such documents were provided, and Respondents failed to provide any documentation concerning Jean F.'s release in February 2023.

16. On October 6, 2026, this Court requested a reply brief (Doc. No. 9), and on October 12, 2026, Jean F. filed a timely reply (Doc. No. 10).

## DISCUSSION

In his Petition, Jean F. seeks immediate release, arguing that his detention violates the requirements of the INA and accompanying regulations, as well as the Fourth and Fifth Amendments of the Constitution. For their part, the Federal Respondents argue that the detention of Jean F. is mandatory pursuant to 8 U.S.C. § 1225(b)(2). For the reasons set forth below, the Court grants the Petition.

### A. Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### B. Inapplicability of 8 U.S.C. § 1225

It is an undisputed matter of fact that Respondents detained Jean F. pursuant to their discretionary authority under 8 U.S.C. § 1226. The Form I-200 administrative warrant was

directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the [INA] [i.e., 8 U.S.C. §§ 1226, 1357] and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." (Doc. No. 8-7.) In response to the Petition, however, Respondents advance a different basis for the detention of Jean F.: 8 U.S.C. § 1225(b)(2)(A), as interpreted by *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention noncitizens, without any individualized determination and regardless of whether the noncitizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry).[2] *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1180, No. 25-6842, 2026 WL 2196424, at *9, 16 (9th Cir. July 30, 2026) (rejecting Respondents' "new interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problems," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits).

This Court concludes that Respondents cannot now change the basis for the detention of Jean F. He was detained under section 1226 alone, and Respondents advance no legal argument to support the proposition that they can alter this fact through filing of their written responsive submissions. Thus, just as it is stated in the Form I-200 on which the detention was based, the Court concludes that the Respondents detained Jean F. pursuant to the framework of 8 U.S.C. § 1226. *See, e.g.*, *Martha C.G.P. v. Blanche*, No.

[2] Respondents observe that, unlike the petitioner in *Avila*, Jean F. received humanitarian parole upon entry. Ultimately, that distinction is irrelevant to Respondents, as they argue that Jean F. became subject to section 1225(b)(2) when his parole expired.

26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *2 (D. Minn. May 13, 2026) (rejecting respondents' contention that petitioner was subject to mandatory detention under section 1225(b) where Form I-200 warrant served during petitioner's arrest represented that detention was pursuant to section 1226); *Hector J.A.S. v. Shea*, No. 26-CV-2242 (JRT/DLM), 2026 WL 1243500, at *2 (D. Minn. May 6, 2026) (same); *see also Espinoza-Avalos*, No. 8:26-CV-0191, 2026 WL 1396593, at *1–3 (D. Neb. May 19, 2026).

### C. Invalidity of Warrant

Having determined that Respondents have detained Jean F. pursuant to section 1226, the Court considers whether Jean F. was brought into custody pursuant to a valid warrant or pursuant to an authorized warrantless arrest. For the reasons discussed below, the Court concludes he was not.

Pursuant to 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, a [non-citizen] may be arrested and detained pending a decision on whether the [non-citizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Ahmed M. v. Bondi*, No. 25-CV-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026). A Form I-200 is an administrative warrant which authorizes detention of a non-citizen's if it is "issued only by those immigration officers listed in [section] 287.5(e)(2) . . . and may be served only by those immigration officers listed in [section] 287.5(e)(3)." 8 C.F.R. § 236.1(b)(1). Putting both requirements together, DHS may detain a non-citizen using Form I-200 only if the Form I-200 indicates who the issuing and serving immigration officers are and if those officers are, in fact, authorized to issue and/or serve the form. *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1). This is because only immigration officers are

"authorized to issue warrants of arrest under the relevant regulation." *Fernando C. C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *5 (D. Minn. Feb. 17, 2026). Therefore, a warrant is invalid when it does not indicate who the issuing immigration officer is and who the serving immigration officer is. *Cf. Tanneh W. S. v. Blanche*, No. 26-CV-2775 (LMP/EMB), 2026 WL 1801140, at *3 (D. Minn. June 23, 2026) (holding that a Form I-200 warrant was valid when both the issuing and serving officers' information verified them as deportation officers).

Here, Respondents did not establish that they satisfied the second requirement of section 236.1(b)(1). The record presented established that while the Form I-200 warrant was issued by Supervisory Detention and Deportation Officer Olsen, it was served by Josh Morkon. (Doc. No. 8-7). Respondents did not establish who Josh Morkon is, what position he holds, or whether he is an immigration officer authorized to serve Form I-200 warrants under section 287.5(e)(3). *Cf. Fernando C. C.*, 2026 WL 446408, at *5 (holding that while the "issuing officer's chicken-scratch handwriting makes it difficult for the Court to discern who exactly issued the warrant," the Court could at least decipher that it was issued by an authorized immigration officer).

For another independent reason, the warrant is invalid because there are unspecified facts that Respondents point to as their basis for establishing probable cause of Jean F.'s arrest. (Doc. No. 10 at 11–12.) The warrant used "biometric confirmation of the subject's identity and a records check of federal databases" as the determination for probable cause. (Doc. No. 8-7.) The Respondent's Form I-213 record of Jean F. states that "DO Xiong conducted records check in Department of Security (DHS) databases, with biometric

confirmation of identity which indicated [Jean F.] was unlawfully present in the United States." (Doc. No. 8-5 at 2.) However, this record includes no information concerning how DO Xiong reached this conclusion, which necessarily requires drawing inferences from an absence of a record. There is no declaration describing the information reviewed or explaining what information is being stored and searched on DHS databases. The Court cannot credit DO Xiong's conclusion, absent some evidence in the record that points to how Jean F.'s information within DHS databases establishes probable cause that he is removable from the United States. *See Jaminton R.B. v. Mullin*, No. 26-CV-3091 (ECT/JFD), 2026 WL 2350324, at *2 (D. Minn. Aug. 13, 2026) (holding that a Form I-200 arrest warrant lacked probable cause because "[b]iometric confirmation involves the measurement or analysis of a unique physical or behavioral characteristic" whereas the "record contain[ed] no information showing . . . biometric confirmation of [Petitioner's] identity").

Because Jean F.'s detention was pursuant to an invalid warrant, and therefore unlawful, immediate release is the appropriate remedy. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."); *see also Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927–28 (S.D. Iowa 2026) (concluding ICE had no authority to arrest petitioner relying on Form I-200 that issued before the NTA); *Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) (granting petition on grounds that detention under section 1226(a) was unlawful where Form I-200 "was not issued until after [petitioner's] arrest and initial detention"); *see also, e.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944

(LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' arrest of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *3 (D. Minn. June 29, 2026) (same); *Hector J.A.S.*, 2026 WL 1243500, at *2 (ordering release of petitioner where respondents did not issue NTA until booking following arrest in the field); *Pina C.D.B. v. Bondi*, No. 26-CV-1929 (KMM/DJF), 2026 WL 810676, at *3 (D. Minn. Mar. 24, 2026) (concluding "immediate release is the proper remedy" for arrest effected in absence of valid administrative warrant); *Jouquin C.S. v. Bondi*, No. 26-CV-1438 (DWF/DJF), 2026 WL 483256, at *2–3 (D. Minn. Feb. 20, 2026) (concluding DHS's detention of petitioner under section 1226(a) was unlawful because DHS arrested petitioner pursuant to Form I-200 that was invalid by virtue of being issued prior to issuance of NTA); *Marinero v. Bondi*, No. 26-CV-1007 (JMG), 2026 WL 357653, at *1 (D. Minn. Feb. 9, 2026) ("[I]ssuing an administrative warrant after an arrest . . . isn't good enough to trigger § 1226(a).").[3]

---

[3] Although the Court need not address the question of whether Jean F.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due process factors tip in Jean F.'s favor. Jean F. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available and inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Jean F.'s ongoing detention is also unlawful for this reason. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Jean F. immediately, without conditions of release, and in any event no later than 4:00 p.m. CT on October 19, 2026.

2. On or before 11:00 a.m. CT on October 20, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Jean F.

3. On or before 11:00 a.m. CT on October 20, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Jean F. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Jean F. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 16, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court